# Hockenbury *against* Carlisle.

Counsel who has been consulted about a title to land will not be permitted to purchase an outstanding one, and set it up in opposition to his client.

ERROR to the Common Pleas of *Juniata* county.

Samuel Carlisle against Herman Hockenbury, David W. Huling and others. Ejectment for a tract of land. The original title to the land in dispute was in Benjamin Say, and both parties claimed under him. The plaintiff claimed by virtue of a sale for taxes made in 1811 under the Act of 1804; and to support this title he offered in evidence the proceedings by which the land was assessed, taxed and sold in the name of Benjamin Say, to be followed by proof that the plaintiff went into possession under his purchase in 1811, and continued it until 1821, when he was put out by some one claiming under the present defendants. The court admitted the evidence for the purpose of showing how the plaintiff got possession, and how long he kept it; and, upon an objection by the defendants, sealed an exception.

The defendants then gave in evidence a deed from Benjamin Say to William Conn, and a mortgage for the purchase money, dated 25th December 1804; a *scire facias* upon the mortgage, issued 23d September 1820, upon which judgment was rendered and the land was levied and sold by the sheriff, whose deed to David W. Huling, the present defendant and landlord, was dated 16th April 1827.

The plaintiff then gave in evidence the record of an action of ejectment to January term 1820, by Samuel Carlisle, the present

plaintiff, against Dr Benjamin Say and terre-tenants, for the same land, brought by David W. Huling as attorney for the plaintiff: also the receipt of " David W. Huling, attorney for S. Carlisle," dated 10th March 1820, " Received from Samuel Carlisle a deed for a tract of land in Tuscarora Valley, also a lease for the same, also some other papers, to be returned when suit is ended." Proof was then given that David W. Huling, as attorney for Dr Say, receipted to the sheriff for the balance of the purchase money after the payment of costs, made upon the sale on the mortgage.

On the point raised by this evidence, which was the only one of any consequence in the cause, the court (HEPBURN, President) instructed the jury, that if they believed that David W. Huling was the counsel of Samuel Carlisle in 1820, and in that year brought for him an ejectment for this land against Dr Benjamin Say, he could not afterwards purchase the title of Dr Say, and set it up as a defence against his former client; and, therefore, whether the title of the plaintiff under the commissioners' title was entirely perfect or not, it was sufficiently so to enable him to recover against the present defendant.

This opinion was the subject of exception.

*J. Fisher* and *Huling*, for plaintiffs in error.

The commissioners' title was clearly irregular, wanting many of the requisites which the law imposes; and so the court was of opinion, for they ruled the cause for the plaintiff independent of the validity of it. Title, as a question of evidence, must be judged of *ex visceribus suis*, and as of the time when and the circumstances under which it is offered, and cannot be made either legal or illegal by subsequent events in the trial. Here, then, the court admitted this evidence, with all its irregularities, for the special purpose of showing how the plaintiff obtained possession of the land, and how long he kept it; and then, upon the effect of the defendants' evidence, left as matter of fact to the jury, gave to it the consequence of a perfect title, established by perfect evidence. 2 *Pen. Rep.* 501; 16 *Serg. & Rawle* 351; 8 *Serg. & Rawle* 344. But can it be a matter of any importance to the plaintiff whether Mr Huling claims this land in his own right or as a trustee for Dr Say? Was, there anything inconsistent in his being the attorney of Samuel Carlisle in an action of ejectment for the land, and the attorney of Dr Say to collect the money due upon his mortgage? And if the sale and purchase of the land for Dr Say was a consequence of the discharge of his professional duty, it cannot be made an objection to the title of Dr Say that the land was purchased by his attorney and the deed taken in trust for him, especially in an action of ejectment, where defence may be made upon an outstanding title. 8 *Watts* 314; 17 *Serg. & Rawle* 15; 3 *Watts & Serg.* 488.

*Parker* and *Benedict*, contra.

[Hockenbury v. Carlisle.]

The evidence offered was clearly sufficient to establish a title under the limitation contained in the Act of 1804, whether it was regular in its proceeding or not; and it was for the plaintiff to show his possession of five years under that title. But it would be evidence against a trespasser, accompanied by evidence of actual possession; and especially would be evidence against the present defendant, who, when his title accrued, stood in the relation of the counsel of the plaintiff. The possession of five years gave a good title to the plaintiff. 2 *Penn. Rep.* 503, 162: 1 *Watts & Serg.* 501; 3 *Watts & Serg.* 510; 5 *Watts* 287. But it is said that Mr Huling purchased as the attorney or trustee of Dr Say. It cannot be perceived why this should make any difference, conceding it to be true. The principle involved is, that the counsel shall not abuse the confidence of his client to the destruction or disparagement of his right. What matters it, then, whether he acts for himself or as the trustee of another? Either equally violates the principle. Perfect fidelity between the counsel and client must be insisted upon, or the relation, for any useful purpose, must cease. 8 *Watts* 95.

The opinion of the Court was delivered by

GIBSON, C. J.—The rule in *Galbraith* v. *Elder* is, that a counsel who has been consulted about a title shall not set up a title in opposition to it; and is not the case of the defendants within it? It is not disputed that the title in contest was at first in Dr Say; but the parties claim it adversely through different channels. The plaintiff claims it by a tax sale; subsequently to which he leased the land to a tenant, who, becoming refractory, was reduced to submission by an ejectment conducted by Mr Huling in opposition to the title of Dr Say, who was also a defendant. Some years afterwards, the plaintiff leased the land to one of the present defendants, by whose consent the others entered as tenants to Mr Huling, who had in the mean time purchased Dr Say's right on a judgment pursuant to a *scire facias*, brought by Mr Huling as Dr Say's counsel, on a mortgage for purchase money given by one Conn, to whom the Doctor had sold the land. As was ruled in *Fager* v. *Campbell*, (5 *Watts* 287), a tax sale passes the ownership clear of mortgages and derivative interests; consequently, if this tax sale is good, the title under the mortgage is bad, and thus the title of Mr Huling is brought into conflict with the title of his quondam client. Tax sales anterior, as this was, to the statute of 1815, were seldom faultless; and Mr Huling's former position as the plaintiff's professional adviser, would give him a decisive advantage by disclosing to him the assailable points of his antagonist's case.

Had he barely prosecuted the mortgage to judgment and execution, he would have done nothing inconsistent with his former relation; for the sale on the *liberari facias* did no more than en-

[Hockenbury v. Carlisle.]

force the mortgage between Dr Say and Conn, the purchaser from him, by transferring the legal title that was in him, as well as the equity of redemption that was in Conn, to a purchaser subject to the effect of the tax sale. But he would not be permitted to enforce the purchaser's title by impeaching the tax sale, either as a witness or a counsel, and à *fortiori* he shall not do so as the purchaser himself. He is nakedly a purchaser of Dr Say's title, which he was retained to oppose; and he stands, in relation to it, as he would have stood had he purchased it immediately from Dr Say himself, with a release of Conn's equity of redemption. What then must be the event of an attempt to set up Dr Say's title, which Mr Huling had successfully opposed? The rule in *Galbraith* v. *Elder* is, that such a purchase enures to the benefit of the client; and although it had not been established before that case by precedent, it was sustained by analogies drawn from relations less confidential than that which exists between counsel and client. But the defendants argue that the land was bought in for Dr Say himself, because the purchase money was paid by Mr Huling's receipt for a part of the mortgage debt; and hence an allegation of a resulting trust. But if that were the object, Dr Say, or his legal adviser, committed an egregious blunder in the choice of a trustee. Why select the former adviser of his antagonist, or why not take the conveyance directly to the Doctor himself? The rule that a professional advocate shall not purchase an antagonist title for any one but his client, is a wholesome one, and it is founded in a wise policy, which is to be enforced even where the purchase is in trust; for the creation of a connection so intimate as the relation of *cestui que trust* and trustee would be inconsistent with the duty which binds him to silence in regard to the confidential communications of his client, from which he can never be absolved. Here, however, there is no evidence of a trust, for Mr Huling appears ostensibly for himself, and takes defence in his own name, so that there can be no misapplication of the rule in bringing it to bear on him. The defendants, however, standing in the place of the plaintiff's lessee, could not resist the landlord's title, but it was not thought necessary to take that ground in the court below. Points of error in regard to the admission or exclusion of evidence, have been raised, which it is unnecessary to determine, because the defendant is so entirely concluded by the rule in *Galbraith* v. *Elder*, as to be beyond the reach of injury from incompetent evidence.

Judgment affirmed.